HUNTER vs. HALLETT and others.

---

Although a husband holds a bond and mortgage made out in favour of his wife, and receives the interest, yet this is not a reduction into possession. And if she dies, he cannot sue upon it, without taking out letters of administration, even though he may be exclusively entitled.

If a husband dies without having administered to his wife's choses in action, and administration is granted to another, the latter becomes a trustee for the husband's representatives.

---

October 3,
1832.

Practice.
Parties.
Husband
suing for de-
ceased wife's
choses in ac-
tion.

THE bill in this cause was filed to foreclose an equity of redemption and for the purpose of obtaining a sale of mortgaged premises. The mortgage had been executed to the trustees of the complainant's late wife, Elizabeth Hunter, formerly Elizabeth Desbrosses; and the trust was created by a deed which she had executed of her personal estate before her marriage. During the coverture, the bond and mortgage came into the hands of the complainant, under an instrument in writing, by which the surviving trustee, at the request of Mrs. Hunter, and with the consent of the complainant, relinquished the trust and transferred to her, by the name of Elizabeth Hunter, all the trust property, including the bond and mortgage in question.

Neither in the original trust deed nor in the deed of surrender and assignment was the property declared to be for the separate use of the wife or to be held free from the control of her husband. And it appeared that from the time the trust was relinquished in one thousand eight hundred and eight, down to the year one thousand eight hundred and twenty-nine, the

complainant (the husband) received the interest on the bond and mortgage as it became due.

In the month of February, one thousand eight hundred and thirty, Mrs. Hunter died; and, the bond and mortgage remaining unpaid, the complainant filed this bill in his own name, and without having taken out letters of administration upon his wife's estate. He relied, solely, upon his right as surviving husband.

One of the defendants, who was entitled to the equity of redemption by purchase from the mortgagor, raised an objection to the husband's right to file a bill, until he showed a better title than that which the mere possession of the bond and mortgage conferred.

Mr. *Jesse Hoyt*, for the complainant.

Mr. *D. Selden*, for the opposing defendant.

THE VICE-CHANCELLOR. The law has very clearly determined what the rights of the husband are in the *choses in action* belonging to the wife at the time of the marriage or which accrue to her during coverture. He has in them only a qualified property; that is to say, if he reduce them into possession during the wife's lifetime, they become his property absolutely, if he do not, and she should survive him, then they remain her own by survivorship; but, if she should die in her husband's lifetime, then he becomes entitled: whether in virtue of his marital right by survivorship, or only as administrator of her estate, remains to be seen?

Here it is proper to remark, that although the bond and mortgage came to the hands of Mr. Hunter in the lifetime of his wife, and he received the interest for many years, still, this was not a reduction into possession in a legal sense, so as to vest the property in him absolutely; for it is clear that the bond and mortgage remained a *chose in action* notwithstanding, and would have gone to the wife had she survived her husband: *Nash* v. *Nash*, 2 *Mad. C. R.* 133; 2 *Powell on Mort.* (*Coventry's edit.*) 746. (*n. H.*)

*1832.*

HUNTER
*v.*
HALLETT.

*October* 15,
1832.

But the husband is the survivor and entitled to take. The question then is, in what capacity does he take? If it be that the law casts upon him the right only as administrator, or he must assume this character in order to avail himself of the right, then Mr. Hunter should have procured letters of administration before filing a bill. The rule as generally laid down in the books is, that when a husband survives his wife, he becomes entitled to her *choses in action* in the representative capacity of administrator to his wife, and not by mere survivorship: 1 *Roper's Husband and Wife,* 203; *Clancy,* 4; and 1 *Prest. Abst.* 349.

This is undoubtedly correct as a general rule. But it must be understood with this modification, that the law casts upon him the right by survivorship, so far as the beneficial use of the property is concerned, although, for the purpose of enforcing the right, the law regards him as taking in a representative character, and which character he has a right to assume, as a matter of course, by taking out letters of administration. In *Whitaker* v. *Whitaker,* 6 *J. R.* 112, the supreme court had occasion to examine the law as to the right of a surviving husband in the *choses in action* of his wife; and Chief Justice *Spencer,* in delivering the opinion, clearly points out the distinction to which I have adverted. He says, "administration cannot be necessary to entitle the husband to the beneficial use of what he recovers. It merely confers a right to sue for her *choses in action;* and if he can get them without suit, his title is as perfect as though he had taken out letters of administration." In *Stewart* v. *Stewart,* 7 *J. C. R.* at p. 246, 7, Chancellor *Kent* recognizes the principle of the husband's succeeding to her property *jure mariti.* And it will be perceived that the provision introduced into the statute of distributions, exempting the estates of *femes covert* from the operation of the statute, is also a clear recognition of the husband's right independent of what he acquires by administration, since he is not bound to make distribution amongst the wife's next of kin, but holds the surplus in his own right by survivorship, growing out of the relation of marriage, and not

1832.

HUNTER
*v.*
HALLETT.

as next of kin under the statute: *Mascall,* 62; *Co. Litt.* 351, *a. Butler's note.*

That this is the law is rendered still more certain by the consideration, that if the husband dies without administering upon or receiving payment of the *choses in action* of his deceased wife, and administration is afterwards granted to any of her next of kin, such administrator becomes a trustee for the husband's representatives: *Elliott* v. *Collier,* 3 *Atk.* 526; and this can only be upon the principle, that the property vested in him before administration and his becoming administrator is only subservient to the right which the law confers without it.

Notwithstanding the surviving husband is thus entitled independently of and before he takes upon himself the office of administrator, it is, nevertheless, necessary he should do so before he can be permitted to take legal measures to collect the wife's outstanding debts or enforce any contract entered into with her. This appears to be a well established rule and one which cannot be dispensed with even in a court of Equity. In *Grosvenor* v. *Lane,* 2 *Atk.* 180, *Lord Hardwicke* states explicitly, that after the death of the wife, the husband cannot sue at law for *choses in action* of the wife in his own right: but he must first take out administration to her. And the case of *Squib* v. *Wyn,* 1 *P. W.* 378, may be cited as an instance where such a course was taken by the husband; and as showing the law which bears upon the present case in other respects. But the case of *Humphreys* v. *Humphreys,* 3 *P. W.* 349, is even a more direct authority upon the point now under consideration. There, *Lord Talbot* held, that although in a bill for an account of personal estate the party entitled to administration was before the court as a complainant, yet that was not sufficient without letters of administration actually taken out; and he allowed a demurrer to the bill on this ground —giving the complainant, however, time to take out letters of administration and the liberty of charging the same, by way of amendment to the bill; and which was accordingly done.

In South Carolina it has been decided, after great consideration, that the next of kin to a deceased person cannot maintain

a suit in equity for the recovery of property without adminis-
tering, although he may be exclusively entitled: *Farley* v. *Far-
ley*, 1 *McCord*, 506 ; and *Bradford* v. *Felder*, 2 *Ib*. 168.

These were not cases, it is true, of a surviving husband suing
upon the *choses in action* of the wife : but the principle must
be similar.   The same reasons of policy which would re-
quire any next of kin, although possessing exclusively the
right of administering, to become the administrator, in fact,
before they should be permitted to obtain judgments or de-
crees in their favor, apply with equal force to a husband in
respect to the outstanding property of his wife.   So far as re-
gards the rights of creditors, it is as necessary in the one case
as in the other : for, if there are debts unpaid which were con-
tracted by the wife *dum sola*, the creditors, after her death,
can only look to such property as may not have been reduced
into possession by the husband in her life time—he, by that
event, being discharged from all liability either in his own per-
son or on account of any property previously acquired by her.
Hence the reason for considering the husband as the personal
representative of the deceased wife in respect to her *choses in
action* and the propriety of treating her oustanding personal
property as assets, in the first instance, to be applied in the
due course of administration.   Upon this principle, and with a
view of securing to creditors the benefit of such property, pro-
vision has been made by the Revised Statutes for appointing
the husband an administrator in such cases, requiring him to
give bond as other persons do, and holding him liable for the
debts of the wife, to the extent of the assets which may come
to his hands—at the same time securing to him and his per-
sonal representatives all that may remain after payment of the
debts ; 2 *Rev. Stat.* 75, sec. 29, 30.

This legislative enactment is of itself sufficient to show that
the courts ought not, even in favor of a husband, to depart
from the rule which requires those who would sue in a repre-
sentative capacity to become so in fact, according to the forms
of law.   The Statute declaring the husband liable for the
debts, as administrator, even though he should not take out
letters, creates no reason why it should be dispensed with.—

The law has a further object in view: it looks to his giving security in a bond for a faithful discharge of the trust towards creditors.

Equity must here follow the law.

It may be an idle ceremony to require Mr. Hunter to take out letters of administration; but I can make no exception in favor of an individual case. He must present himself to the court in the character by which alone his right to file a bill can be acknowledged, before he has a decree upon the mortgage.

I shall not, however, dismiss the present bill, but suffer the cause to stand over until the complainant procures himself to be duly appointed administrator, and with leave, then, to file a supplemental bill in order to set forth the fact.

An amendment like the one in *Humphreys* v. *Humphreys*, before cited, is not admissible, according to the present well settled practice of the court: although the case is a sufficient precedent for allowing the same thing in effect to be done by way of supplemental bill.

It must, nevertheless, be upon payment of the costs of the defendant who has appeared and answered in the suit: being the costs of putting in the answer and of the hearing, and which would have been unnecessary provided the complainant had filed a proper bill in the first instance.